## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**BENJAMIN NICHOLS, JR., Personal Representative of the Estate and Stepson of JAMES PAUL HAMILTON, JR., Deceased**

      **Plaintiff,**

      **v.**

**GREATER SOUTHEAST COMMUNITY HOSPITAL, et al.,**

      **Defendants.**

**Civil Action No.  03-2081 (JDB)**

## MEMORANDUM OPINION & ORDER

Pro se plaintiff Benjamin Nichols, personal representative of the Estate of James Paul Hamilton, brings this action against Greater Southeast Community Hospital ("Greater Southeast"), Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc. ("Kaiser"), and Logisticare Solutions, LLC ("Logisticare") [collectively "defendants"] for wrongful death and survival relating to the alleged negligent treatment of Mr. Hamilton.  Currently before the Court are motions for summary judgment filed by each defendant.  For the reasons that follow, the Court will grant defendants' motions.

## BACKGROUND

**A.      Factual Background**

Prior to his death on September 13, 2000, Mr. Hamilton was diagnosed with hypertension, gout, benign prostatic hyperthrophy, nephritis, chronic urinary tract infections, azotemia, anemia, bilateral renal cysts, chronic obstructive pulmonary disease, chronic

depression, renal insufficiency, chronic renal failure, and end state renal failure.  See Kaiser's

Statement of Undisputed Facts ("Kaiser Statement") ¶ 1.  To treat the chronic renal failure, Mr.

Hamilton underwent the placement of an arteriovenous fistula in 1999 so that he could undergo

hemodialysis treatment.  Id. ¶ 2.  From the time of that procedure until his death, Mr. Hamilton

was treated with hemodialysis.  Id. ¶ 3.  On many occasions he was transported to and from his

hemodialysis treatment by Metro Access, which provides transportation services for disabled

people.  Logisticare contracts with the Washington Metropolitan Area Transit Authority to

administer the Metro Access program.  See Logisticare Statement of Material Facts as to Which

There Is No Genuine Issue ("Logisticare Statement") at 2.

On September 7, 2000, Mr. Hamilton was taken by ambulance to Greater Southeast

Hospital complaining of shortness of breath, episodic nausea, and recurrent falls.  See Greater

Southeast Statement of Material Facts Not in Dispute ("Greater Southeast Statement") ¶ 1b.

According to plaintiff, prior to the arrival of the ambulance, a representative from Kaiser, Pamela

Martin, said that Mr. Hamilton should be taken to the emergency room at Washington Hospital

Center.  See Am. Compl. ¶ A.  However, the ambulance driver would not take Mr. Hamilton

there, so he was instead transported to Greater Southeast.  Id.

Upon arriving at Greater Southeast, plaintiff requested that Mr. Hamilton be transferred

to Washington Hospital Center, but staff at Greater Southeast refused the request and sought to

perform tests upon Mr. Hamilton.  Id. ¶ B.  Upon his admission to Greater Southeast, the hospital

records indicate that Mr. Hamilton was an "ill-looking male who was confused and not able to

give good verbal responses."  Greater Southeast Statement ¶ 1e.  The records also indicate that

Mr. Hamilton had not undergone dialysis for the two weeks prior to his admission.  Id. ¶ 1f.  He

was given a battery of tests, which showed cerebral atrophy, and he was given dialysis treatment. Id. ¶¶ 1g-h.   On September 13, 2000, while still at Greater Southeast, Mr. Hamilton's condition rapidly deteriorated and he died.  Id. ¶ 1i.  According to the death certificate, Mr. Hamilton died of acute myocardial infarction, and hypertensive heart disease.  Id. ¶ 2.  Other contributing factors were uremic encephalopatny from chronic under dialysis, type II diabetes mellitus, and end stage renal disease.  Id. ¶ 3.

**B.     Procedural Background**

Plaintiff filed this action on September 11, 2003 against Kaiser, Greater Southeast, Metro Access, and Washington Kidney Center Fresenrun Medical Care Columbia Heights Dialysis Unit ("Washington Kidney Center").  On May 4, 2004, the Court set a discovery schedule that required plaintiff to identify experts by June 24, 2004.  The Court modified the Scheduling Order on August 23, 2004, giving plaintiff until September 23, 2004 to provide expert disclosures.  In August and December of 2004, plaintiff's claims against Metro Access and Washington Kidney Center were dismissed.

Greater Southeast and Kaiser then filed motions for summary judgment alleging, inter alia, that plaintiff failed to identify any medical experts in support of his claims.  Besides filing oppositions to these motions, plaintiff also filed a motion for leave to file an Amended Complaint.  Plaintiff's motion to amend sought to include Logisticare as a defendant and change the name of Kaiser to Kaiser Permanente.  The Court permitted plaintiff to include Logisiticare as a defendant, but denied plaintiff's request to change Kaiser's name.  In rendering that opinion, the Court indicated that the motions of Greater Southeast and Kaiser would be taken under consideration.  Since then, Logisticare has also filed a motion for summary judgment, which is

now ripe for consideration.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed.R.Civ.P. 56(c)).

In determining whether there exists a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on summary judgment. Celotex, 477 U.S. at 322. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted). Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252; see also Holbrook v. Reno, 196 F.3d 255, 259-60 (D.C. Cir. 1999).

## ANALYSIS

Plaintiff's Amended Complaint alleges three counts: a survival claim of wrongful death and negligence; a wrongful death act claim[1]; and a claim for punitive damages.  Plaintiff claims that each defendant, by breaching their applicable standard of care, caused the death of Mr. Hamilton.  Plaintiff also asserts that the degree of conduct by defendants was so egregious as to merit punitive damages.  For each defendant, plaintiff differentiates the conduct he believes caused the death of Mr. Hamilton.  In the case of Logisticare, plaintiff alleges that the unreliability of their transportation services, and harassment by their workers, caused Mr. Hamilton distress leading to his death.  For Kaiser, plaintiff complains that it failed to devise a plan to protect Mr. Hamilton's interests.  Finally, in the case of Greater Southeast, plaintiff raises a laundry list of allegedly negligent acts that he believes caused the death of Mr. Hamilton.

In the motions currently before the Court, defendants all argue that they are entitled to summary judgment because plaintiff has failed to establish a prima facie case.  In particular, Greater Southeast[2] and Kaiser[3] contend that they are entitled to judgment as a matter of law

---

[1]  Plaintiff's claim for relief under the wrongful death act is barred as untimely.  As both Kaiser and Greater Southeast argue, in the District of Columbia there is a one-year statute of limitations, pursuant to D.C.Code § 16-2702, for a wrongful death action brought under the wrongful death statute, D.C.Code § 16-2701.  See Medlantic Long Term Care Corp. v. Smith ex rel. Estate of Ferguson, 791 A.2d 25, 34 n.8 (D.C. 2002).  Plaintiff's original Complaint was filed almost three years after Mr. Hamilton's death, well beyond the one-year statute of limitations period.

[2]  Greater Southeast also argues that plaintiff's claims against it must be dismissed because plaintiff did not file the requisite proof of a claim in Greater Southeast's bankruptcy proceeding.  See Greater Southeast Mot. at 11-14.  However, because plaintiff has failed to establish a prima facie claim, the Court does not need to address this argument.

[3]  Kaiser also argues that plaintiff's claims against it are preempted by the Federal Employees Health Benefits Act ("FEHBA").  See Kaiser First Mot.  According to Kaiser, the

because plaintiff has failed to designate a medical expert who can establish the applicable

standard of care for Mr. Hamilton's treatment.  Such an expert would also establish how

defendants breached that duty of care, and how that breach caused Mr. Hamilton's death.  More

generally, Logisticare argues that plaintiff has not established that Logisticare failed to use

ordinary care, or how its actions were the proximate cause of Mr. Hamilton's death.[4]  In response,

plaintiff acknowledges his failure to obtain a medical expert, but contends that such a failure

should be excused under the doctrine of *res ipsa loquitur*, which states that in certain

circumstances of an injury, a reasonable inference can be drawn that, had the applicable standard

of care been met, the injury would not have occurred.  See Pl. Opp'n to Greater Southeast Mot. at

2; see also Sweeney v. Erving, 228 U.S. 233, 238-39 (1913).  Plaintiff also notes that he observed

the wrongdoing of defendants as a "layman," which should preclude judgment in favor of

_____

plan at issue is governed by FEHBA, and thus all terms in the plan that "relate to the nature,
provision, or extent of coverage or benefits" shall preempt state law that "relates to health
insurance or plans."  5 U.S.C. § 8902(m)(1) (2004); see also Robinson v. Humana Group Health
Plan, 1996 U.S. Dist. LEXIS 1657, at *16 (D.D.C. Nov. 4, 1996) (FEHBA preempts all state law
claims that have a "connection or reference" to a FEHBA plan).  The Court need not reach this
issue because Kaiser is entitled to judgment as a matter of law based on plaintiff's inability to
establish a prima facie case.

   [4]  Although the standard of care that plaintiff alleges Logisticare breached (i.e., failing to
provide timely and polite transportation services) may be within the purview of lay knowledge,
the causal link between the alleged breach and Mr. Hamilton's death certainly is not.
Considering the cause of death from Mr. Hamilton's death certificate (acute myocardial
infarction, and hypertensive heart disease) as well as the numerous contributing factors, any
connection between Logisticare's alleged breach and Mr. Hamilton's death must be established by
expert testimony.  See Riddick v. Washington Hosp. Ctr., 183 F.R.D. 327, 329 (D.D.C. 1998) (in
a medical malpractice case, expert testimony needed to establish every element of a prima facie
case, including causation); Lasley v. Georgetown Univ., 688 A.2d 1381, 1383 (D.C. 1997) (rule
requiring expert testimony applies to proof of causation).

defendants.[5]

Under District of Columbia law,[6] "[t]he plaintiff in a negligence action bears the burden of proof on three issues: 'the applicable standard of care, a deviation from that standard by the defendant, and a causal relationship between that deviation and the plaintiff's injury.' " Toy v. District of Columbia, 549 A.2d 1, 6 (D.C. 1988) (quoting Meek v. Shepard, 484 A.2d 579, 581 (D.C. 1984)).  To establish that a defendant breached the applicable standard of care and caused a plaintiff's injury, a plaintiff need not rely on expert testimony "where the alleged negligent act is 'within the realm of common knowledge and everyday experience.'" Toy, 549 A.2d at 6 (quoting District of Columbia v. White, 442 A.2d 159, 164 (D.C. 1982)).  However, a plaintiff must "put on expert testimony to establish what that standard of care is if the subject in question is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson." Messina v. District of Columbia, 663 A.2d 535, 538 (D.C. 1995) (quoting District of Columbia v. Peters, 527 A.2d 1269, 1273 (D.C. 1987)); see also Butera v. District of Columbia, 235 F.3d 637, 659 (D.C. Cir. 2001).  For cases alleging negligence in the provision of

---

[5]  Plaintiff notes that Logisticare was added as a defendant on May 11, 2005, and therefore he should have the opportunity to conduct discovery with this defendant.  However, Logisticare's motion for summary judgment contends that plaintiff has failed to establish that any activity of Logisticare caused Mr. Hamilton's death.  See Logisticare Mot. at 4.  Notwithstanding Logisticare's recent addition to the case, plaintiff has always been able to establish the cause of Mr. Hamilton's death, namely by employing medical experts.  Furthermore, there is no information in the sole custody of Logisticare that is crucial to the establishment of causation.  Thus, it is appropriate for the Court now to consider Logisticare's motion for summary judgment on this ground.

[6]  This case was removed from the District of Columbia Superior Court by Kaiser pursuant to 28 U.S.C. § 1441, as an action over which this Court has federal question jurisdiction under 28 U.S.C. § 1331.  However, the Court has supplemental jurisdiction over plaintiff's state law claims, which were brought pursuant to the laws of the District of Columbia.

medical care and treatment ( i.e., medical malpractice claims), a determination whether a defendant breached the applicable standard of care, and whether that breach caused the plaintiff's injury, is generally outside the purview of a layman.  Dada v. Children's Nat'l Med. Ctr., 715 A.2d 904, 908 (D.C. 1998); Berkow v. Lucy Webb Hayes, 841 A.2d 776, 779 (D.C. 2004). Thus, typically, in a medical malpractice case a plaintiff must generally present the testimony of medical experts to establish a prima facie case.  See Derzavis v. Bepko, 766 A.2d 514, 523 (D.C. 2000); Riddick, 183 F.R.D. at 329 (medical expert needed to establish all elements of a medical malpractice claim).

Here, plaintiff has not presented any expert evidence regarding the applicable standard of care for the treatment of Mr. Hamilton, or evidence to show that the defendants' alleged breach caused Mr. Hamilton's death.  Plaintiff has testified that he has been trying to obtain the services of an expert, but he had not "found an expert that's willing to testify on my behalf in the matter." Kaiser Mot., Ex. 9, Deposition of Benjamin Nichols at 11-12.  In fact, the only evidence before the Court regarding Mr. Hamilton's death is the death certificate which lists the cause of death as acute myocardial infarction, and hypertensive heart disease, with uremic encephalopatny from chronic under dialysis, type II diabetes mellitus, and end stage renal disease as contributing factors.  See Greater Southeast Statement ¶¶ 2-3.   Determining how, if at all, the actions of any of the defendants contributed to Mr. Hamilton's death is well beyond the pale of "common knowledge or experience" of a layperson.  See Derzavis, 766 A.2d at 523 (cases involving "scientific treatment, complex medical procedures, or the exercise of professional skill and judgment" are beyond the common knowledge of a jury).  Mr. Hamilton's treatment and ensuing death involves complex medical and scientific issues well beyond the pale of lay knowledge.

Thus, plaintiff must present expert testimony to establish the elements of his negligence claims against defendants, or provide a reason as to why such evidence is unnecessary.

The Court has given plaintiff adequate opportunity to locate an expert, but he had not done so.  Neither of plaintiff's stated excuses -- *res ipsa loquitur* or his own observations -- make up for his failure to identify a medical expert to establish how the actions of the defendants breached the applicable standard of care, and how those breaches caused Mr. Hamilton's death. To rely on the doctrine of *res ipsa loquitur*, plaintiff must establish that "(1) [the occurrence is] of the kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the control (exclusive or joint) of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." Hailey v. Otis Elevator Co., 636 A.2d 426, 428 (D.C. 1994).  However, in a medical malpractice case, like plaintiff's, the doctrine of *res ipsa loquitur* is not available as a substitute for expert testimony on the applicable standard of care.  See Derzavis, 766 A.2d at 523 (in case involving "scientific treatment, complex medical procedures, or the exercise of professional skill and judgment" no inference of negligence without expert testimony); Talley v. Varma, 689 A.2d 547, 552-53 (D.C. 1997) (no inference of negligence in medical malpractice claim without expert testimony).  For the same reason, plaintiff's own observations of the events surrounding the death of Mr. Hamilton are insufficient to establish a prima facie case of negligence on a medical malpractice claim.  Because plaintiff has not presented any expert evidence establishing a prima facie claim for negligence against any defendant, all defendants are entitled to judgment as a matter of law.

Accordingly, it is this 18th day of August, 2005, hereby

**ORDERED** that Kaiser's motion for summary judgment is **GRANTED**, and judgment is entered for Kaiser; it is further

**ORDERED** that Greater Southeast's motion for summary judgment is **GRANTED**, and judgment is entered for Greater Southeast; and it is further

**ORDERED** that Logisticare's motion for summary judgment is **GRANTED**, and judgment is entered for Logisticare.


_/s/ John D. Bates_
JOHN D. BATES
United States District Judge

Copies to:


Benjamin Nichols, Jr.
1202 Darlington Street
Forestville, MD 20747
        *Plaintiff*

Diane V. D'Aiutolo
TYDINGS & ROSENBERG, LLP
100 East Pratt Street
26th Floor
Baltimore, MD 21202
(410) 752-9722
Fax: (410) 727-5460
Email: ddaiutolo@tydingslaw.com
        *Counsel for defendant Kaiser*

Catherine A. Hanrahan
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER
1341 G Street, NW
Washington, DC 20005

(202) 626-7660
Fax: (202) 628-3606
Email: hanrahanc@wemed.com
      *Counsel for defendant Greater Southeast Community Hospital*

John J. O'Neill, Jr.
LAW OFFICES OF JOHN J. O'NEILL, JR.
22 West Jefferson Street
Suite 407
Rockville, MD 20850
(301)279-0099
Fax: (301) 279-0099
Email: johnjoneilljr@verizon.net
      *Counsel for defendant Logisticare*